**BATES v LOYAL PROTECTIVE INS CO**

Ohio Appeals, 2nd Dist, Franklin Co

No 2818.   Decided Oct 15, 1937

Harry H. Kohn, Columbus, and James B. Yaw, Columbus, for appellant.

Arnold, Wright, Purpus & Harlor, Columbus, for appellee.

## OPINION

By GEIGER, J.

This case is before the court on appeal on questions of law.

The errors assigned are that the court erred in its refusal to give plaintiff's request to charge the jury before argument, and in giving to the jury before argument the defendant's request No. 1, and in overruling the motion of the appellant for a new trial.

Plaintiff, in her amended petition, alleges that on the 21st day of November, 1927, in consideration of the payment of an annual premium of $80.00, payable quarterly during the existence of the policy, the company delivered its policy contract to Lloyd V. Bates, insuring him against accidental death, partial disability and sickness; that

the defendant accepted the quarterly installment of $20.00, beginning on October 17, 1927, and continuing in regular successive quarterly periods to and including July 15, 1933 in the aggregate of $460.00; that at the time of the execution of the policy, and for a long time prior thereto, said Lloyd V. Bates was non compos mentis, and was at said time and at all times since and still is insane; that by reason of the insanity the said contract of insurance was wholly invalid, and without consideration to said incompetent person, and that said incompetency was manifest during all the period alluded to; that plaintiff had made demands for the return of premiums and been refused; she asks judgment in the sum of $460.00, with appropriate interest.

The defendant filed an answer, admitting the execution of the policy and that said policy insured Lloyd V. Bates subject to the provisions and limitations contained against certain accidents and sickness disability, for which loss the policy indemnified the insured; that it was issued in consideration of the agreements contained in the application, and of the payment of quarterly premium of $20.00; that it received twenty-one quarterly premiums of $20.00 each, in the aggregate total of $420.00.

The answer denies that at the time of the execution of the policy and prior thereto Lloyd V Bates was insane, and that if he is now insane such insanity began subsequent to the issuance of the policy.

For a further defense, it is alleged that subsequent to the issuance of the policy Lloyd V. Bates and his wife made application for disability benefits, which were denied for the reason that the policy contained a provision that no indemnity was payable resulting wholly from insanity originating within one year from the date of the policy; that by reason of such action and demand for indemnity, said policy was treated as a valid contract between the parties, and that the insured is estopped to deny that the contract was invalid and without benefit to the insured.

As a further defense, it is alleged that the policy was uncancellable, and that it was renewable for the term of three months at the option of the insured, and that upon the tender of premiums on behalf of the insured the defendant was required to accept the same, and that said premiums were tendered by either the insured or his wife, with full knowledge of the facts, and that plaintiff is estopped to assert a claim for premiums so paid and accepted.

For reply the plaintiff denies that she is

estopped to recover, for the reason the payments were without consideration to the incompetent person, and were received by the defendant without obligation on its part to respond to any claim of said incompetent person other than the return of the premiums.

The policy contains the following pertinent matter:

"The falsity of any statement in the application materially affecting either the acceptance of the risk or the hazard assumed hereunder, or made with intent to deceive, shall bar all right to recover under this policy.

"No indemnity shall be payable for disability resulting wholly or in part from insanity, * * * originating within one year from the date hereof."

The policy further provides that it is issued in consideration of the statement in the application, made a part of the contract, and the payment of an initial premium of $20.00 which shall carry the insurance until April 1, 1928, "and, at the option of the insured, may be renewed throughout its term from period to period of three months each thereafter by the payment in advance of the quarterly premium, or from period to period of one year each thereafter by the payment in advance of the annual premium on the date due or the first business day thereafter."

On April 20, 1936, the cause was tried to a jury before Judge Randall, who, on the conclusion of all the evidence, and on the authority of **Hosler v Beard, 54 Oh St 398, and Pichel, Admr. v The Fair Store Company, 29 Oh Ap 322 (6 Abs. 612)**, directed a verdict for the defendant.

A motion for new trial was filed, notice of appeal given, and a bill of exceptions filed. On September 14, 1936, on motion, the verdict was set aside, and a new trial granted for error in directing the jury to return a verdict in favor of defendant.

Thereupon, the cause came on for a second hearing on October 2, 1936, and was submitted to the jury under charge of the court, and a verdict returned in favor of defendant. On June 11, 1937, the motion for new trial was overruled, and notice of appeal given.

In the second case, the evidence introduced in the first case was by stipulation, used in the trial.

Complaint is made that the court erred in refusing the plaintiff's request for the following charge:

"I charge you that if you find from a preponderance of evidence that Lloyd Bates to the knowledge of defendant, was insane at any time when he made payments to defendant for renewal of the insurance policy, the plaintiff is entitled to recover from the defendant the said payments."

It is also complained that the court erred in giving the following special charge in behalf of the defendant:

"If you find that Doctor Bates was sane at the time the policy was issued, you will return a verdict in favor of the defendant even though you find that he became insane thereafter."

Inasmuch as the plaintiff has confined her objections to these two alleged errors on the part of the court, in failing to charge and charging the jury as above set forth, we need not consider the question that was originally raised as to the sanity of Bates at the time of the issuance of the policy.

The plaintiff confined her objections to the questions as to whether the insanity at a subsequent period would affect the continuance of the policy of the quarterly payments.

The court, in its general charge, stated:

"Now really, the issue is within a very narrow and limited scope. The real issue in this case is whether or not Doctor Bates was insane at the time of the issuance of the policy. If he was, then there was no valid contract between the parties, because a valid contract presupposes and requires a meeting of the minds of the parties entering into that contract. If one party has not mental capacity to comply with the requirements, then there could have been no meeting of the minds and therefore there was no valid contract. If there was no valid contract there was no obligation on the part of the insurance company; if there was no obligation on its part, then it gave no consideration for the premiums paid."

In April, 1928, the agent of the insured notified the company that the insured was suffering from toxemia, supposedly caused

by a bad tooth, and that he was disabled therefrom.

From that time forward there was an interchange of communications in reference to the plaintiff's condition.

Defendant company conducted an investigation and found that in July, 1928, the insured had become of unsound mind. The defendant, on December 5, 1928, informed Essie G. Bates that its investigation revealed the fact that Lloyd V. Bates was suffering from a disease for which the policy does not provide indemnity—the same having manifested itself before the expiration of one year from the date of the policy, and for that reason no indemnity would accrue.

The fact seems to have been clearly established that at least from July, 1928, until the time of trial, Bates was insane.

We are of the opinion that the question in this case narrows to the point of determining whether or not quarterly renewal payments paid to the company after the insured was known to be insane, can be recovered back from the company, under the optional provisions for renewal of the policy heretofore referred to, on the ground that the insured being insane at the time the option was exercised, there was no valid renewal of the policy, and that this being a defense that could have been successfully asserted by the company, no consideration passed to the insured and therefore the renewal premiums are recoverable.

A number of cases have been cited by counsel, many of which in our opinion have no bearing upon this question, inasmuch as the effect of insanity was not under discussion, but merely the question of the rights of the insured and the company, under the optional provisions of the policies under examination.

We are cited to the case of **Hosler v Beard, 54 Oh St 398,** which holds that:

"As a general rule the promissory note of a person non compos mentis, is invalid; but the rule is subject to the qualification that when such a note is given for necessaries, or for other adequate consideration of benefit furnished the maker in good faith without knowledge of his unsound mental condition, it may be enforced to the extent of the value of the consideration so furnished."

While this case does not deal with conditions such as are here revealed, it contains a very interesting compilation of cases discussing the effect of contracts of those suffering mental disability.

The case of **Insurance Company v Felix, 73 Oh St 46,** lays down the principles governing the recovery of premiums paid to a company on policies which for some reason might be invalid and not binding upon the company.

"To constitute a consideration for the payment of premiums on a policy of life insurance it is essential that the insurer incur a liability by a contract which is not affected by any infirmity which it may elect to interpose as a defense to an action on the policy if the life insured should end."

We do not think it necessary to comment upon the principles there laid down as they are so clearly stated.

Judge Shauck says:

"More than a century ago it was held by Lord Mansfield in Tyre v Fletcher, Cowp., 666, that premiums paid upon a void policy of insurance may be recovered because 'The underwriters receives a premium for running the risk of indemnifying the insured, and whatever cause it may be owing to, if he does not run the risk the consideration for which the premium or money was paid into his hands fails, and therefore he ought to return it.'"

This case is interesting and should be read with care.

It is, therefore, safe to conclude that if the quarterly renewal payments made to the company while Lloyd V. Bates was insane and known to be such, would not provide coverage for the disabilities and indemnities provided for in the policy, the company should return the premiums.

On the other hand, if the company was bound by the payment to and reception by it of these quarterly renewal premiums so that the policy was in force and binding upon the company, then the insured received a consideration, and the company would not be required to return the premiums.

We are of the opinion that §9391, GC, referred to by Judge Randall merely affects the admissibility of evidence, and that inasmuch as there is no attack now being made upon the original validity of the policy, there can be no application of

this statute. We do not believe that the word 'renewed' used in the provisions for the payment of quarterly premiums has there any other meaning than 'extended' or 'continued.'

We have made search for cases more directly in point than those cited, but have been unable to find them.

We must endeavor to seek the proper conclusion without much assistance from reported cases.

We start with the assumption that the policy was originally issued to a sane man, and was a valid obligation of the company, so long as the premiums were paid by one competent to exercise an option and pay premiums.

The contract having been made by parties competent to contract, we examine some of its provisions which might affect its interpretation.

We find a provision that "No indemnity shall be payable for disability resulting wholly or in part from insanity originating within one year from the time hereof."

We think we are justified in concluding that at the time of the making of the policy, when both parties thereto were competent to contract, they had contemplated the possible insanity of the insured that might originate within one year from its date.

There is nothing said in the policy to the effect that the insanity so originating voided the policy or affected the obligation of the company, other than for disability arising out of the insanity. Neither is there any provision directly affecting the option of the insured to continue the policy if insanity occurred.

The policy on its face, being kept in force by quarterly payments of premiums, it must be assumed that the parties, when both were competent to contract, intended that the policy could be kept in force by the payment of the premium even though the insured had become insane, for the reason that the policy itself covered such a contingency.

The policy being, as it is, renewable at short periods, and insanity being in most cases a mental condition likely to continue over one or more of the quarterly payment periods (in this case continuous over several years), it can not reasonably be asserted that the disability, for which no indemnity is to be paid, is to be the cause

of the cancellation of the policy for all indemnities, on the ground that the insured had no mental capacity to exercise an option.

All that was contemplated at the time of making the original policy, in reference to insanity, was that no indemnity should be payable for disability arising therefrom.

Had the parties had in contemplation the denial to the insured of the right to continue the policy in force for other disabilities covered by it, it should have so stated.

Many policies of the industrial nature have a provision giving to the company an option to discontinue the policy at the termination of any period.

That is not so in this case. Even though it may have appeared to the company a wise thing to cancel the policy held by an insane person, yet it was obliged to accept the premium and continue the insurance against other disabilities, so long as such premiums were paid.

The company was not concerned as to the mental inability of the insured to exercise an option because of insanity, but was solely concerned with the receipt of the premium.

Had the insured suffered from any sickness or accident, not connected with his mental condition during the period covered by the renewal premiums, we are of the opinion that the company would be liable under the provisions of the contract, and could not avail itself of a defense that the insured was incapacitated to exercise an option.

The company received the premium for running the risk of indemnifying the insured, and this risk continued so long as the premiums were paid; the consideration for which the premiums were paid did not fail, and therefore there is no right to recover back these premiums.

We are, therefore, of the opinion there was no error in the action of the court below in refusing to give the special charge of the plaintiff or in giving the special charge requested by defendant, and that there is no other prejudicial error.

Entry accordingly.

BARNES, PJ, and HORNBECK, J, concur.